UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. MORGAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALEJANDRO MAYORKAS, Secretary of U.S. Department of Homeland Security,<br><br>　　　　Defendant. | No. 2:12-cv-01287-TLN-DB<br><br>**ORDER** |

　　　This matter is before the Court on Plaintiff John P. Morgan's ("Plaintiff") Motion for Judicial Review of Administrative Decision. (ECF No. 204.) Defendant Alejandro Mayorkas ("Defendant") filed an opposition. (ECF No. 205.) Plaintiff filed a reply. (ECF No. 206.) For the reasons set forth below, the Court AFFIRMS the administrative decision.

///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff formerly worked in Sacramento for Federal Protective Service ("FPS") as a Criminal Investigator. (Administrative Record ("AR") at 1.) In October 2006, the Joint Intake Center received an anonymous report that Plaintiff had been running queries in a law enforcement database for purposes unrelated to his work. (*Id.* at 649–51, 658.) The Office of Professional Responsibility ("OPR") began an investigation the next month. (*Id.* at 649–51.) Agents first interviewed Bill Mason. (*Id.* at 650–51.) Mason told the agents that he was responsible for conducting background checks for job applicants at a private security company. (*Id.* at 660.) He also told the agents he had asked Plaintiff on two or three occasions to run checks on job applicants of Middle Eastern descent. (*Id.*) Mason told the agents that he recalled asking Plaintiff eight years earlier to run a check on an applicant named Walid Mustafa. (*Id.*)

In December 2007, agents interviewed Plaintiff. (*Id.* at 651, 676.) Prior to the interview, the agents told Plaintiff he could not discuss the nature of the interview with anyone other than his legal counsel. (*Id.* at 366.) Plaintiff signed a document titled "WARNING TO NOT DISCLOSE INVESTIGATIVE INFORMATION," which warned Plaintiff that failure to comply could subject him to disciplinary and/or criminal action. (*Id.* at 690–91.) At the conclusion of the interview, Plaintiff signed an affidavit indicating he had asked Immigration and Customs Enforcement ("ICE") Agent Luz Dunn to run a query on Mustafa after Mason asked Plaintiff to run a check on Mustafa as having possible terrorist ties. (*Id.* at 676–83.)

Four days after the OPR interview, Plaintiff invited Dunn out to lunch. (*Id.* at 503–04.) Prior to Dunn's arrival at his office, Plaintiff placed the OPR affidavit in a law enforcement magazine. (*Id.* at 391, 505.) When Dunn arrived, Plaintiff gave her a carrot cake and directed her attention to the law enforcement magazine on his desk, telling her to read an article of interest. (*Id.* at 391, 697, 710.) Although Dunn told Plaintiff she had already read that issue, Plaintiff insisted that Dunn read the article. (*Id.*) When Dunn opened the magazine, she found Plaintiff's affidavit and realized he wanted her to read it. (*Id.*) She saw her name in the affidavit, along with a name of Arabic descent. (*Id.* at 697.) After seeing Plaintiff's affidavit, Dunn felt the carrot cake was an attempted bribe and felt uneasy. (*Id.* at 391–95, 697, 710.) On the way to lunch,

Dunn made an excuse to cancel and asked Plaintiff to drop her off at the mall instead. (*Id.*) Plaintiff drove Dunn to a truck delivery entrance in an alley behind the mall. (*Id.*) When Dunn got out of the car, Plaintiff said to her, "I would not let anything happen to you," "I don't know Mustafa," and "Tell the truth." (*Id.*) Dunn felt intimidated. (*Id.*) OPR agents interviewed Dunn a few weeks later, and she told the agents about Plaintiff's statements and his previous request that she run a query on Mustafa for non-law enforcement reasons. (*Id.* at 395, 696.)

FPS provided an investigation report to Region 1 Deputy Regional Director Suzanne MacMullin. (*Id.* at 647.) On November 3, 2008, MacMullin proposed the agency remove Plaintiff from federal service for seven reasons, including Plaintiff's unauthorized disclosure of his affidavit and improper attempt to influence a witness. (*Id.* at 591–96.) Region 1 Regional Director Tim Bane reviewed MacMullin's proposal and held a hearing on the matter. (*Id.* at 599–638.) On December 31, 2009, Bane decided there was insufficient evidence to sustain the proposal as to three of the seven reasons. (*Id.* at 639–45.) However, Bane sustained the proposal based on the remaining four reasons: Plaintiff's unauthorized disclosure; Plaintiff's improper attempt to influence a witness; and two more minor offenses relating to Plaintiff's failure to attend a second OPR interview in 2008. (*Id.*) Bane found that the unauthorized disclosure and attempt to influence a witness charges were extremely serious because they reflected negatively on Plaintiff's integrity as a law enforcement officer. (*Id.*) Bane considered mitigating factors, such as Plaintiff's nearly 30 years of federal service, and concluded that the charges justified removal. (*Id.* at 741–49.)

Plaintiff subsequently challenged his removal in a union arbitration. (*Id.* at 345–589.) The arbitrator held a hearing at which Plaintiff, Bane, and Dunn testified. (*Id.*) On August 9, 2010, the arbitrator sustained all four charges and concluded that removal was a reasonable penalty due to the seriousness of the charges. (*Id.* at 249–72.)

Next, Plaintiff appealed the arbitrator's decision to the Merit Systems Protection Board ("MSPB"). (*Id.* at 751.) On April 13, 2012, the MSPB reversed the arbitrator's finding as to the two less serious charges, but it affirmed the arbitrator's finding that Plaintiff improperly disclosed

///

his affidavit and attempted to influence a witness. (*Id.* at 751–65.) The MSPB also affirmed removal as a reasonable penalty for the two sustained charges. (*Id.* at 761.)

On May 12, 2012, Plaintiff filed a civil action in this Court, asserting various employment discrimination claims and seeking judicial review of the MSPB decision to remove him from federal service. (ECF No. 1.) After a jury trial, the Court ruled in Defendant's favor as to Plaintiff's employment discrimination claims. (*See* ECF No. 195 (granting Defendant's Rule 50 motion); ECF No. 199 (dismissing Plaintiff's age discrimination claims).) The only remaining claim is Plaintiff's instant request for judicial review. (*See* ECF No. 58 at 42–43 ("Plaintiff's cause of action for judicial review of the [MSPB] order . . . shall be tried to the Court separately following trial on all other causes of action.").)

## II. STANDARD OF LAW

The Civil Service Reform Act permits "mixed cases" where "an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (emphasis in original); *see* 5 U.S.C. § 7703(b)(2). On the discrimination portion of the case, the plaintiff is entitled to trial *de novo* by the Court. 5 U.S.C. § 7703(c). The non-discrimination portion is reviewed on the administrative record and may be set aside only if found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §§ 7703(c)(1)–(3).

## III. ANALYSIS

Plaintiff argues (1) the attempting to influence a witness charge is not supported by the evidence and (2) the penalty of removal is too severe. (ECF No. 204 at 6–13.) Notably, Plaintiff does not dispute the unauthorized disclosure of investigative information charge.[1] (*Id.* at 1.) Because the Court finds removal was a reasonable penalty for the unauthorized disclosure charge standing alone, the Court need not and does not address Plaintiff's first argument.

---

[1] As the MSPB pointed out, Plaintiff "conceded at the hearing before the arbitrator that he was guilty of this charge." (AR at 505, 756.)

4

In his second argument, Plaintiff contends neither the arbitrator nor the MSPB gave due consideration to the *Douglas* factors. (*Id.* at 9 (referencing *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981).) "In *Douglas* the [MSPB] articulated twelve factors that may be considered in determining the appropriate sanction for a particular offense." *McClaskey v. U.S. Dep't of Energy*, 720 F.2d 583, 587–88 (9th Cir. 1983) (citing *Douglas*, 5 M.S.P.B. at 332). "The [MSPB] is not required to consider all twelve factors in every case; it need only consider those relevant to the individual case." *Id.*

In Bane's decision, he stated he had considered the *Douglas* factors and primarily focused his attention on the nature and seriousness of the sustained misconduct in relation to Plaintiff's duties as a Criminal Investigator. (AR at 642.) Bane found the offenses reflected negatively on Plaintiff's integrity as a law enforcement officer, especially considering Plaintiff's "calculated efforts" to improperly disclose his affidavit. (*Id.*) Bane emphasized that Plaintiff's conduct called into question his credibility as a government witness and such information would have to be disclosed as potential impeachment information if he was called to testify. (*Id.*) In addition, Bane explained Plaintiff's conduct called into question how he would handle situations in the future. (*Id.* at 643.) Bane stated, "In a law enforcement organization where our responsibility is to arrest and prosecute people who break the law and take away their freedom, the agency must have total confidence that a Criminal Investigator is acting properly at all times." (*Id.*) Bane concluded he had no confidence that Plaintiff would conduct a criminal investigation in a proper and ethical manner. (*Id.*) Bane also summarized other aggravating and mitigating factors and found that on balance all the relevant factors weighed in favor of removing Plaintiff from federal service. (*Id.*) Bane opined that either charge, standing alone, warranted Plaintiff's removal from federal service. (*Id.* at 642.)

During the subsequent arbitration, the arbitrator reviewed Bane's decision and the *Douglas* factors. (*Id.* at 268–70.) The arbitrator concluded that "despite a lack of disciplinary record and his 27 years of service, the nature and seriousness of [Plaintiff's] offenses alone establish by a preponderance of the evidence that the penalty of removal was well within the limits of reasonableness." (*Id.* at 271.)

On appeal, the MSPB acknowledged that Plaintiff made "numerous arguments with respect to the reasonableness of the penalty," but it stated that "a detailed discussion of those arguments is not warranted." (*Id.* at 760.) The MSPB concluded,

> Even though two of the four charges sustained by the arbitrator are being reversed, the two remaining charges — unauthorized disclosure of investigative information and attempting to influence another employee in an official investigation — are clearly the most serious charges, and both charges go to the heart of the appellant's job duties as a Criminal Investigator. As noted by the arbitrator, the agency's deciding official stated that either of these sustained charges, standing alone, would warrant the appellant's removal. We therefore conclude that the removal penalty is within the bounds of reasonableness for the sustained charge.

(*Id.* at 760–61.)

Plaintiff raises three main arguments as to the *Douglas* factors. First, he argues that his mental state was not evaluated as a mitigating factor. (ECF No. 204 at 9–11.) Second, Plaintiff argues that Bane improperly relied on past suspensions, which tainted the arbitrator and the MSPB's subsequent evaluations. (*Id.* at 12.) Third, Plaintiff argues the record demonstrates that other employees who engaged in similar offenses were not disciplined. (*Id.* at 12–13.) For all these reasons, Plaintiff requests the Court remand the matter to the MSPB. (*Id.* at 13.) The Court will address Plaintiff's arguments in turn.

### i. Mental Condition

In a *Douglas* factors review form, Bane indicated Plaintiff's medical condition was irrelevant because Plaintiff failed to provide evidence connecting his medical condition to his improper disclosure of the affidavit. (AR at 748.) Plaintiff argues "[e]vidence that he was receiving psychiatric treatment during the relevant period *was* part of the evidence before the arbitrator and the MSPB." (ECF No. 204 at 10 (emphasis added).) Plaintiff points to a letter from his psychiatrist dated June 2, 2008, which states Plaintiff was being treated for a depressive condition since August 28, 2007. (*Id.*) The letter asserts, "[t]he principal features of [Plaintiff's] condition include anxiety generated by the perception that his work environment is a hostile one, a mild degree of depressive ideation, and understandable apprehension about his future." (AR at 153.) The letter further notes Plaintiff "has had insomnia [sic] some ruminations." (*Id.*)

However, as Defendant correctly points out, the letter does not address Plaintiff's condition as it relates to his improper disclosure. Rather, the apparent purpose of the letter is to persuade the OPR to defer holding a second interview with Plaintiff "until such time as [Plaintiff] feels ready to respond fully, completely, and in a relaxed and open way." (*Id.*)

Plaintiff also cites to his testimony from his arbitration hearing. (ECF No. 204 at 10 (citing AR at 511, 536).) When asked about his state of mind at the time he placed the affidavit in the magazine, Plaintiff testified he was confused "because of everything that had happened to [him]." (AR at 511.) Later, when asked how he would respond to Bane's opinion that Plaintiff's integrity had been impaired, Plaintiff testified he "made a mistake" that he could not justify because he "was in a different place then" and he was "lonely and desperate." (*Id.* at 536.) Not only do these excerpts lack clarity, but Plaintiff also fails to cite to any part of his testimony explicitly connecting his improper disclosure to his mental condition.

While Plaintiff's evidence vaguely indicates he was receiving mental health treatment for a depressive condition at the time he disclosed the affidavit to Dunn, neither the letter nor Plaintiff's testimony establish that Plaintiff's medical condition was a significant factor in his conduct. To the extent Plaintiff also argues his condition is relevant to other *Douglas* factors (ECF No. 204 at 11), the Court finds there is insufficient evidence in the record to make such a leap. As such, Bane did not err in finding Plaintiff's medical condition to be irrelevant, and the arbitrator and MSPB did not err by omitting Plaintiff's mental state as a mitigating factor.

*ii.     Past Suspensions*

Plaintiff next argues Bane improperly relied on past suspensions, which in turn tainted the arbitrator and MSPB's evaluations. (*Id.* at 12.) The Court disagrees.

Bane listed Plaintiff's prior disciplinary record as an aggravating factor, with the caveat that he would have imposed the penalty of removal even if Plaintiff did not have previous suspensions. (AR at 744.) However, there is no evidence that Bane's limited consideration of Plaintiff's suspensions affected any future decisions. To the contrary, the arbitrator concluded it was improper to consider Plaintiff's past suspensions and found that removal was a reasonable penalty based on the other *Douglas* factors. (*Id.* at 271.) Similarly, the MSPB did not address

Plaintiff's past suspensions as an aggravating factor. (*Id.* at 760–61.) Therefore, Plaintiff fails to persuade the Court that the MSPB committed any error related to his past suspensions.

### iii. Agency Inconsistency

Lastly, Plaintiff asserts Defendant did not discipline other employees for similar offenses. (ECF No. 204 at 12–13.) Plaintiff cites an arbitration decision overturning a 14-day suspension he received for surreptitiously recording employee meetings. (*Id.*) As Defendant correctly points out, nothing in the cited decision addresses discipline of an employee for improperly disclosing investigative information. As such, the prior decision appears to be wholly irrelevant to the issue of whether Defendant treated similar misconduct differently.

Plaintiff also argues Region 9 Director Mario Canton violated the terms of a non-disclosure warning "yet received no discipline whatsoever." (*Id.* at 13.) Plaintiff states if the Court remands this matter to the MSPB, he "will request that this additional information be made part of the record." (*Id.*) However, Plaintiff fails to cite any authority that would allow this Court to consider evidence beyond the existing administrative record, and the Court declines to do so. Based on the record before the Court, there is no evidence that the agency has been inconsistent in its discipline regarding a law enforcement officer's unauthorized disclosure of investigative information. Therefore, neither the arbitrator nor the MSPB erred by omitting alleged agency inconsistency as a mitigating factor.

In sum, Plaintiff fails to present any basis for disturbing the MSPB's decision to remove him from federal service. Moreover, under 5 U.S.C. § 7703(c), judicial review of the MSPB's choice of sanctions is "extremely limited." *McClaskey*, 720 F.2d at 586. Courts "defer to the [MSPB's] judgment unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion." *Id.* Further, courts "have found the penalty of dismissal to be excessively harsh only when the offense committed was extremely minor." *See id.* at 585–89 (affirming the MSPB's removal of an agency electrician with fourteen years of service and no disciplinary record who had purchased replacement wire valued at $418 to "cover-up" a theft committed by his co-workers). In the instant case, the Court agrees with the MSPB that the charge of unauthorized disclosure of investigative information is a serious offense that goes "to

the heart of [Plaintiff's] job duties as a Criminal Investigator." (AR at 761.)  Accordingly, the Court concludes the penalty imposed by the MSPB was not so disproportionate to the offense as to amount to an abuse of discretion.

**IV.  CONCLUSION**

For the foregoing reasons, the Court hereby AFFIRMS the MSPB's decision and DENIES Plaintiff's motion.  (ECF No. 204.)  As there are no remaining claims, the Clerk of Court is directed to enter final judgment and close the case.

IT IS SO ORDERED.

DATE:  July 7, 2021

Troy L. Nunley
United States District Judge